IN THE UNITED STATES DISTRICT COURT FOR THE FILED
EASTERN DISTRICT OF OKLAHOMA

MAY 20 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By_____
Deputy Clerk

JEMAINE MONTEIL CANNON, )
)
Plaintiff, )
)
v. ) No. CIV 08-148-RAW-SPS
)
CHESTER MASON, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint [Docket #1], the defendants' motion [Docket #25], plaintiff's response [Docket #27], and a special report [Docket #26] prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are Chester Mason, Correctional Health Services Administrator; OSP Physician Dr. Stewart; and OSP Nurse Linda Montgomery, LPN.[1]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

Plaintiff alleges that on January 29, 2008, Dr. Lorenzo performed a surgical procedure on him at Lindsay Municipal Hospital. Before plaintiff's discharge and return to OSP, Dr. Lorenzo provided him with a one-day supply of an antibiotic/anesthetic cream (Silvadene and lidocaine) for post-operative care. Because he only had a one-day supply of the cream, plaintiff requested additional cream, large sterilized pads, large sterile gauze, and waterproof tape at OSP. He claims he needed these supplies, because he was raw, bleeding, and in pain. On the evening of January 30, 2008, Defendant Linda Montgomery, LPN, delivered a small amount of the requested cream, sterile pads, and gauze, but no tape. When plaintiff asked Montgomery about the tape, she said that Defendant Dr. Stewart did not want plaintiff to have any tape. Plaintiff explained to Montgomery that he needed the tape to apply the pads and gauze, and he then submitted a Request for Medical Services and an Emergency/Sensitive Grievance, requesting a roll of waterproof tape.

Plaintiff asserts that, in violation of the emergency grievance procedures, he did not receive a response to the Emergency/Sensitive Grievance until February 27, 2008. Defendant Chester Mason's response denied relief, because three feet of IV tape had been placed in a bag and put in the KOP box for delivery by the nurse. Plaintiff contends Defendant Montgomery did not deliver any tape, so she knew no tape was issued to him. He complains that Montgomery refused or failed to advise Chester Mason that plaintiff did not receive the requested tape.

On March 4, 2008, plaintiff advised Dr. Stewart that he never received any tape, he had been out of the cream for more than two weeks, he was not healing, and he had not been taken for a return visit to Dr. Lorenzo. On March 18, 2008, plaintiff also told Dr. Stewart

2

that he never received any tape or antibiotic/anesthetic cream, but he was charged for the medication. He claims the defendants' failure to provide necessary continuing care, adequate medication, and medical supplies have caused him to suffer pain, permanent scarring, emotional distress, and a compromised healing process.

The defendants have moved for dismissal, alleging, among other things, that plaintiff failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007). Proper exhaustion under the PLRA contemplates full compliance with all agency deadlines, including the deadlines enumerated in a prison's grievance procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

3

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If communication with staff is unsuccessful, he may submit a Request to Staff within seven calendar days of the incident. If the complaint still is not resolved, he then may file a grievance to the reviewing authority or facility correctional health services administrator, whichever is appropriate, within 15 calendar days of the incident or of the date of the response to the Request to Staff, whichever is later. The reviewing authority may extend the submission period up to 60 days for good cause. The inmate may appeal the grievance response to the administrative review authority or chief medical officer, whichever is appropriate, within 15 calendar days of receipt of the grievance response or any amended response. The administrative process is exhausted only after all of these steps have been taken.

Defendant Linda Montgomery, LPN, states by affidavit in the special report that following plaintiff's medical procedure and return to OSP, he was evaluated by Defendant Dr. Stewart, who ordered plaintiff to receive Milk of Magnesia every day until he had his first bowel movement. He also ordered Metamucil to be taken for three months, and a mixture of Silvadene and lidocaine gel to be applied daily to plaintiff's anal area for two weeks. When Nurse Montgomery first delivered the medical supplies to plaintiff, she did not take tape to him, because tape applied to the perineal area can irritate or tear the skin tissue. Plaintiff became very argumentative and agitated, so another nurse later delivered tape at the request of the security staff. There are no additional records of plaintiff's submitting sick call requests or Requests to Staff concerning issues of denial of medication or supplies.

Chester Mason, Correctional Health Services Administrator for the Health Services

Unit at OSP, states by affidavit that on February 14, 2008, plaintiff filed a grievance stating he needed medical supplies to continue dressing his surgical wounds. Plaintiff failed to submit a Request to Staff, however, before filing his grievance. According to the grievance report, plaintiff was transported for surgery and returned to the facility on January 30, 2008. Dr. Stewart wrote recommendations to apply a mixture of Silvadene and lidocaine daily to the affected area for two weeks after plaintiff received the medication. Dressing supplies and the medication were delivered to plaintiff on January 31, 2008.

According to the affidavit by Mike Murray, DOC Nurse Manager in the Medical Services office, plaintiff's improperly submitted grievance appeal was returned unanswered on April 1, 2008. The respondent asserts that plaintiff has failed to properly exhaust his administrative remedies, because he failed to properly comply with two of the three required exhaustion steps under DOC policy by not (1) submitting a Request to Staff, or (2) properly appealing to the administrative review authority.

Plaintiff contends he properly submitted his grievance to the reviewing authority without informal resolution, because it was of a sensitive or emergency nature. He claims DOC officials failed to follow proper grievance procedure policy, so the defendants have defaulted on their defense that he failed to exhaust his administrative remedies. He further maintains Dr. Stewart did not examine him, and the orders regarding Milk of Magnesia and Metamucil were unrelated to his post-operative care. He did not have surgery on his anal area, and the affidavits stating he received the requested tape are false.

Regardless of what type of surgery was performed on plaintiff and whether he received the tape he wanted, the court finds he has failed to state a constitutional claim. It

is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). Plaintiff merely is asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein.

The defendants also have asked the court to dismiss plaintiff's complaint as frivolous. Based on the above discussion, the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals has consistently held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis

6

either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED as frivolous.

**IT IS SO ORDERED** this 20th day of May 2009.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE